UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| CYNTHIA SINGLETON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 3:06-CV-0760 CAN |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

On November 13, 2006, Plaintiff Cynthia Singleton (Singleton) filed her complaint in this Court. Singleton filed an opening brief on March 15, 2007, and she now asks this Court to remand this matter to the Commissioner. On July 3, 2007, the Social Security Administration (SSA) filed its response brief. Singleton filed her reply brief on August 2, 2007. This Court now enters its ruling based upon the record of this case, which includes the pleadings, the motions, the administrative record, briefs of the parties, and the arguments of counsel.

**I.    PROCEDURAL BACKGROUND**

On October 10, 2003, Singleton filed an application for Disability Insurance Benefits. (Tr. 11)  Singleton is insured for Disability Insurance Benefits through December 31, 2008. (Id.) The claim was denied by notice dated March 23, 2004, then denied again on reconsideration by notice dated July 15, 2004. (Id.)  After a timely request for hearing, Singleton testified via teleconference before an Administrative Law Judge (ALJ) in a hearing on September 14, 2005. (Tr. 315)  On October 3, 2005, the ALJ held that Singleton was not disabled. (Tr. 309)

1

Singleton filed a timely request for review.  (Id.)  However, the Appeals Council denied review, and the decision of the ALJ remained the final ruling of the Commissioner.  (Tr. 4-7a); 20 C.F.R. § 404.981; Fast v. Barnhart, 397 F.3d 468, 470 (7th Cir. 2005).   Consequently, on November 13, 2006, Singleton filed a complaint in this Court seeking review of the ALJ's decision.  This Court may enter a ruling in this matter based on the parties' consent, 28 U.S.C. § 636(c), and 42 U.S.C. § 405(g).

**II.     ANALYSIS**

    **A.     Facts**

Singleton was born July 29, 1949, and was 54 years old when she claimed onset of disability.  (Tr. 12) Singleton alleges that after September 1, 2003, she became disabled due to osteoarthritis[1], degenerative discs, fibromyalgia[2], and osteoporosis.[3] (Tr. 11)  She has the equivalent of a high school education.  (Tr. 12) She was elected to serve as a recorder of deeds in Stark County and worked in this capacity from July, 1989, until August, 2003.  (Id.)

---

[1] Also known as arthrosis, degenerative arthritis, degenerative joint disease, and osteoarthrosis, osteoarthritis is arthritis characterized by erosion of articular cartilage, which becomes soft, frayed, and thinned with eburnation of subchondral bone and outgrowths of marginal osteophytes.  This condition mainly affects weight bearing joints and often results in pain and loss of function.  Stedman's Medical Dictionary 1388 (28th ed. 2006).

[2] Fibromyalgia is a common syndrome of chronic widespread soft tissue pain accompanied by weakness, fatigue, and sleep disturbances, the cause of which is unknown.  Symptoms are usually associated with and exacerbated by emotional stress.  Most patients experience moderate to severe disability, but symptoms can usually be mitigated with treatments such as education, a regular program of low-impact aerobic exercise and physical therapy.  About one third of patients respond to pharmacologic agents such as antidepressants and muscle relaxants. Stedman's Medical Dictionary 725-726 (28th ed. 2006).

[3] Osteoporosis is an age-related disorder characterized by decreased bone mass and loss of normal skeletal microarchitecture, leading to increased susceptibility to fractures.  Stedman's Medical Dictionary 1392 (28th ed. 2006).

Singleton has a history of back pain dating back to at least April, 2001. (Tr. 128) At that time, her family doctor, Dr. Walter Fritz (Dr. Fritz) examined her and noted pain in her lower back. (Id.) After this examination, Dr. Fritz ordered back x-rays. (Id.) These x-rays revealed possible joint space narrowing. (Tr. 126) On March 27, 2002, Nancy Gappa, CNP, from Dr. Fritz's office, saw Singleton, noting continued complaints of back and neck pain, and reviewed the results of a recent MRI,[4] which indicated lumbar and cervical spine degeneration, but no evidence of stenosis. (Tr. 126, 158-159). In the following years, Singleton saw several physicians regarding her ailments, including Drs. Fritz, Birnbaum, Mohr, Alexander, and Reddy.

    1.    Treating Physicians

Dr. Fritz examined Singleton again on May 3, 2002, reporting no overall improvement regarding the continuing pain in her neck and lower back, and recording that Singleton was experiencing bilateral foot pain and tenderness, as well as persistent exhaustion and non-restorative sleep. (Tr. 124) After two weeks without noticeable improvement, Dr. Fritz referred Singleton to a rheumatologist[5] with a tentative diagnosis of fibromyalgia. (Tr. 123) Dr. Fritz noted that Celebrex[6] had no effect on her pain. (Id)

Rheumatologist Dr. Alan J. Birnbaum (Dr. Brinbaum) examined Singleton multiple times, and found no tenderness, swelling, or limitation of motion in her joints. (Tr. 243-246) Dr.

---

[4]MRI, or Magnetic Resonance Imaging, is a nonionizing technique using magnetic fields and radio frequency waves to visualize anatomic structures. It is useful in detecting joint, tendon, and vertebral disorders. Stedman's Medical Dictionary B13 (28th ed. 2006).

[5] A rheumatologist is a specialist in rheumatism, an indefinite term dealing with various conditions with pain of articular origin or related to other elements of the musculoskeletal system. Stedman's Medicinal Dictionary 1689.

[6] Celebrex is indicated for relief of the signs and symptoms of osteoarthritis, rheumatoid arthritis, ankylosing spondylitis, and for the management of acute pain. Physicians' Desk Reference, 3131 (60th ed. 2006).

3

Birnbaum diagnosed Singleton with cervical stenosis, fibromyalgia, and sleep disorder before referring her to Dr. Brent Mohr (Dr. Mohr), another rheumatologist.  (Tr. 122)  Before seeing Dr. Mohr, Singleton returned to the office of Dr. Fritz, where she was prescribed Flexaril[7] and Arthrotec.[8]  Dr. Mohr concurred in Dr. Brinhaum's diagnosis of fibromyalgia, listed osteoarthritis among Singleton's ailments, and he prescribed physical therapy in addition to several medications, including Arthrotec and Skelaxin.[9]  (Tr. 120-121)  Dr. Birnbaum noted that Singleton had been tried on a variety of NSAIDs,[10] but discontinued their use due to complications from side effects. (Id.)

There were no significant changes in Singleton's symptoms until August 2003, when she reported severe back pain to Dr. Fritz's office.  (Tr. 164)  Singleton claimed that her previous medications were not effective and requested her prescription be changed.  (Id).  Accordingly, Singleton received a prescription for Vicodin.  (Id.)

In April of 2004, Singleton began seeing Dr. Theresa Alexander (Dr. Alexander) as her family doctor, reporting similar symptoms and complaints.  (Tr. 209)  On June 30, 2004, Dr Birnbaum filled out a Fibromyalgia Residual Functional Capacity Questionnaire (FRFCQ) at the behest of Singleton's attorney, in which he opined that Singleton met the criteria for

---

[7]Flexaril is indicated as an adjunct to rest and physical therapy for the relief of muscle spasm associated with acute, painful musculoskeletal conditions.  Physicians' Desk Reference, 1833 (60th ed. 2006).

[8]Arthrotec is indicated for the treatment of the signs and symptoms of osteoarthritis or rheumatoid arthritis in patients with high risk of developing NSAID-induced gastric induodenal ulcers and their complications. Physicians' Desk Reference, 3127 (60th ed. 2006).

[9]Skelaxin is indicated as an adjunct to rest, physical therapy, and other measures for the relief of discomforts associated with acute, painful musculoskeletal conditions.  Physicians' Desk Reference, 1793 (59th ed. 2005).

[10]NSAIDs or non-steroidal anti-inflammatory drugs, is a term describing a large category of drugs frequently used for their analgesic effects in addition to their anti-inflammatory properties.  Common examples include aspirin, acetaminophen, ibuprofen, naproxen, and diclofenac. Stedman's Medical Dictionary 585-586.

4

fibromyalgia as well as cervical osteoarthritis with stenosis. (Tr. 200-204)

Around this time, Singleton also began seeing Dr. Vinjay Reddy (Dr. Reddy), a rheumatologist, who reported in August 2004 that while Singleton had chronic low-back pain and difficulty sleeping, she had no diffuse body pain, nor did she have enough tender points in her neck to meet the criteria of fibromyalgia. (Tr. 268-269) In his August 11, 2004 report, Dr. Reddy specifically indicated he did not believe Singleton suffered from fibromyalgia, and further stated that even if she did, it did not seem to be a major source of problems for her. (Tr. 269).

In February 2005, Singleton's DEXA bone mineral density exam indicated mild progression of osteoporosis. (Tr. 285). In April 2005, Dr. Alexander suggested that Singleton, then working in a cafeteria, should not lift more than twenty pounds because of osteopenia. (Tr. 217) In his FRFCQ, Dr. Birnbaum advised that Singleton could never lift and carry more than ten pounds in a competitive work situation, could lift and carry less than ten pounds only occasionally in a competitive work situation, could stand for fifteen minutes continuously, could sit for twenty minutes continuously, could stand and/or walk at least two hours in an eight-hour day, could sit about six hours in an eight-hour day, could walk one block without rest or severe pain, and could only occasionally stoop, crouch, or reach. (Tr. 200-203) Dr. Reddy completed an Arthritis Residual Functional Capacity Questionnaire in which he concluded that Singleton was incapable of even low stress jobs, could not stoop or crouch, and estimated that she could walk less than one block without rest or severe pain, lift and carry less than ten pounds frequently in a competitive work situation, lift and carry ten pounds occasionally in a competitive work situation, sit continuously for ten minutes, stand for five minutes, and sit for two hours and stand/walk less than two hours total in an eight-hour work day. (Tr. 305-308)

5

      2.      Consulting Physicians

Physicians from Disability Determination Services (DDS) reviewed Singleton's medical records and concluded that Singleton suffered from a spinal disorder.  (Tr. 174-181)  Medical expert Dr. Daniel B Girzadas reviewed Singleton's file and testified at the September 14, 2005 hearing, consistent with the DDS report, that Singleton could lift twenty pounds occasionally, ten pounds frequently, had no manipulative limitations, could stand and/or walk at least two hours in an eight-hour work day, could sit about six hours in an eight-hour work day with the option to sit or stand periodically, and could occasionally stoop, crouch, kneel, crawl, and climb stairs.  (Tr. 333-334)

    The issues this Court must resolve are whether the ALJ's determinations to not award the opinions of Singleton's treating physicians controlling weight were supported by substantial evidence and free of legal error, whether the ALJ failed to appropriately assess Singleton's credibility, whether the ALJ failed to properly evaluate Singleton's ability to perform her past relevant work, and  whether the ALJ failed to properly evaluate the transferability of Singleton's skills.

**B.**     **Standard of Review**

The standard of review for an ALJ's decision is whether it is supported by substantial evidence and free of legal error.  See 42 U.S.C § 405(g); Briscoe v. Barnhart, 425 F.3d 345, 351 (7th Cir. 2005); Haynes v. Barnhart, 416 F.3d 621, 626 (7th Cir. 2005); Golembiewski v. Barnhart, 322 F.3d 912, 915 (7th Cir. 2003).  Substantial evidence is more than a scintilla and means such relevant evidence as a reasonable mind might accept to support such a conclusion.

Richardson v. Perales, 402 U.S. 389, 401 (1972).  A reviewing court is not to substitute its own opinion for that of the ALJ's or to re-weigh the evidence, but the ALJ must build a logical bridge from the evidence to his conclusion.  Haynes, 416 F.3d at 626.  An ALJ decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues.  Lopez v. Barnhart, 336 F.3d 535, 539 (7th Cir. 2003).  An ALJ's legal conclusions are reviewed *de novo*.  Haynes, 416 F.3d at 626.

    **C.**    **Singleton's Motion for Remand**

To be entitled to benefits under 42 U.S.C. §§ 423, 1321a, Singleton must establish that she was "disabled."  See 42 U.S.C. § 423(a)(1)(D).  The Social Security Act defines "disability" as:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).  The Social Security regulations prescribe a sequential five-part test for determining whether a claimant is disabled.  The ALJ must consider whether:

> 1) the claimant is presently employed;
> 2) the claimant has a severe impairment or combination of impairments,
> 3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity,
> 4) the claimant's residual functional capacity leaves him unable to perform his past relevant work, and
> 5) the claimant is unable to perform any other work existing in significant numbers in the national economy.

20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920; Briscoe, 425 F.3d at 352.  If the ALJ finds that the claimant is disabled or not disabled at any step, he may make his determination without evaluating the remaining steps.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  If there is an

7

affirmative answer at either step three or step five, then there is a finding of disability. Briscoe, 425 F.3d at 352. At step three, if the impairment meets any of the severe impairments listed in the regulations, the impairment is acknowledged by the Commissioner. See 20 C.F.R. § 404.1520(a)(4)(iii); 20 C.F.R. app. 1, subpart P, § 404. However, if the impairment is not so listed, the ALJ assesses the claimant's residual functional capacity, which in turn is used to determine whether the claimant can perform her past work under step four and whether the claimant can perform other work in society under step five. 20 C.F.R. § 404.1520(e). The claimant bears the burden of proof on steps one through four, but the burden shifts to the Commissioner at step five. Id.

    1. The ALJ's decision not to assign controlling weight to the opinions of Singleton's treating physicians is not supported by substantial evidence.

Opinions of a treating physician are entitled to controlling weight if supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with the other substantial evidence in the case record. Hofslien v. Barnhart, 439 F.3d 375, 376 (7th Cir. 2006); SSR 96-2p. Medical evidence may be discounted if it is internally inconsistent or inconsistent with other evidence in the record. Clifford v. Apfel, 227 F.3d 863, 870 (7th Cir. 2000). However, an ALJ must explain how statements are necessarily inconsistent. Id. at 871. When evidence in opposition to the presumption is introduced, the rule drops out and the treating physician's evidence is just one more piece of evidence for the ALJ to weigh. Hofslien, 439 F.3.d at 377 (citations omitted). When not given controlling weight, the opinion of a treating physician must be weighed using all of the factors provided in 20 CFR 404.1527(d)(2). 20 C.F.R 404.1527(d). Also, an ALJ must never substitute his own opinion for that of the treating

physician without relying on medical evidence or authority in the record.  Rohan v. Chater, 98 F.3d 966, 968 (7th Cir. 1996); § 20 C.F.R. 404.1527(d)(2); Clifford, 227 F.3d at 870.  An ALJ must minimally articulate reasons for crediting or rejecting a treating physician's opinion, and must build a logical bridge from the evidence to the conclusion.  Clifford, 227 F.3d at 870; Haynes, 416 F.3d at 626.

The ALJ did not assign controlling weight to the opinions of Drs. Birnbaum and Reddy, Singleton's treating physicians, because she felt those opinions were:

> not consistent with the medical records and since their opinions are more restrictive than what is apparent from the claimant's treatment record, her daily activities, including her current work situation where she walks more than one block at a time, and her testimony that she can walk 45 minutes to an hour.  (Tr. 15)

Essentially, the ALJ intermingled two separate reasons to justify her decision to not assign controlling weight to the opinions of Singleton's treating physicians into one sentence, but she failed to articulate an adequate analytical bridge for either of her two reasons.  First, she claimed that the treating physicians' opinions were not consistent with medical records, but she cited no medical evidence and, more importantly, did not explain how such evidence contradicted their opinions.  Secondly, the ALJ implied that the treating physicians' opinions were more restrictive than Singleton's treatment record, and as a result, were internally inconsistent.  However, the ALJ never explained what in Singleton's treatment record was inconsistent with the treating physicians' opinions.  Furthermore, even if the ALJ had specified what was inconsistent with the opinions of Drs. Reddy and Birnbaum, the ALJ failed to explain how it was inconsistent with their ultimate findings, so the ALJ's logical bridge remains incomplete.  The ALJ failed to explain her analysis of the evidence with enough detail and

9

clarity to permit meaningful appellate review as Briscoe demands, which warrants remand.

The ALJ does point to Singleton's daily activities in an attempt to discount the opinions of Singleton's treating physicians.  Specifically, she pointed out that Singleton walked more than one block at a time at her current work situation and recalled that Singleton testified she can walk 45 minutes to an hour at a time, while Drs. Birnbaum and Reddy had indicated that she could only walk one block or less.[11]  (Tr. 15)  However, the ALJ did not explain how Singleton's limitations on walking are necessarily inconsistent with how far she can walk.[12]  Clifford indicates that the ALJ must provide a clearer explanation of how these nebulously discordant answers regarding one detail of Singleton's prognosis support a finding of inconsistency sufficient to discredit every other aspect of the treating physicians' opinions.

In Clifford, the ALJ specifically noted that the plaintiff's activities included walking six blocks, performing household chores, and shopping.  Clifford v. Apfel, 227 F.3d 863, 870 (7th Cir. 2000).  According to the ALJ, these activities were inconsistent with the opinion of the plaintiff's treating physician regarding the plaintiff's limitation on performing work that requires standing or walking.  Id at 870.  The Clifford court found that the ALJ had not provided sufficient explanation for his belief that the plaintiff's activities were inconsistent with the treating physician's opinion, and that his failure to do so constituted error.  Id.

---

[11] This Court notes that it was unable to locate the ALJ's basis for this claim in the record provided.  The ALJ should indicate both where in the record this fact appears as well as how it contradicts the opinions of Singleton's treating physicians.

[12] Furthermore, while Singleton was asked simply, "Can you walk?" to which she replied she can walk for 45 minutes to an hour before having to sit down, (Tr. 321) her doctors were asked a different question: How many city blocks could Singleton walk *without rest or severe pain*?  (Tr. 202, 305)(Emphasis added).  These statements are not contradictory on their face.  Because Singleton never had an opportunity to respond to the same question as her physicians, without further explanation of the ALJ's reasoning,  this Court cannot tell how the ALJ determined that Singleton's statement contradicted her treating physicians' responses.

10

As in <u>Clifford</u>, the ALJ here failed to explain how Singleton's specific activities are inconsistent with the opinions of Drs. Birnbaum and Reddy.  Merely listing one of Singleton's activities, walking, without an explanation of how this activity is inconsistent with a treating physician's opinion is not sufficient.  The ALJ must explain her analysis of the evidence with enough detail and clarity to permit meaningful appellate review.  Without a more detailed construction of the logical bridge connecting the evidence to her conclusions, this Court may not conduct such a review.

Finally, the ALJ also inappropriately substituted her judgment for that of Singleton's treating physicians.[13]  The ALJ pointed out that Drs. Birnbaum and Reddy reported that Singleton could walk one block or less, but she then concluded that because their treatment records revealed "no evidence of muscle weakness in the lower extremities," she was "not persuaded by their conclusions in this regard."   (Tr. 15).  The ALJ did not point to specific evidence in the record that led her to conclude that walking ability cannot be hindered absent evidence of muscle weakness in the lower extremities.  Whether or not muscle weakness is the only reason for a limitation on walking is a medical determination.  In reaching her conclusion without pointing to some medical evidence in the record, the ALJ impermissibly substituted her judgment for that of a physician, or in other words, she "played doctor."  Simply put, the ALJ engaged in a practice repeatedly forbidden by the Seventh Circuit.  See <u>Rohan v. Chater</u>, 98 F.3d 966, 968 (7th Cir. 1996); <u>Clifford</u>, 227 F.3d at 870; § 20 C.F.R. 404.1527(d)(2).

---

[13] Singleton also alleges that the ALJ erred by failing to specifically address how obesity may have affected her impairments.  (Plaintiff's Brief, p. 23). Obesity in combination with another impairment may or may not increase the severity or functional limitations.  SSR 02-1p.  Singleton indicates no medical evidence which suggests that obesity may have aggravated her purported disability, nor does she even claim that obesity did, in fact, aggravate any underlying impairment.  Since the record contains no evidence that Singleton's obesity affected her impairment, the ALJ had no obligation under <u>Gentle</u> to consider obesity separately and did not err by omitting such discussion.

11

In summary, the ALJ inappropriately substituted her own judgment for that of Singleton's treating physicians and she failed to explain how the opinions of Singleton's treating physicians were either internally inconsistent or not consistent with other evidence. Consequently, this Court remands this matter for findings consistent with this opinion.

2.  <u>The ALJ's evaluation of Singleton's credibility was not supported by substantial evidence.</u>

Singleton also argues that the ALJ erred in evaluating the credibility of her testimony regarding the disabling severity of her pain. The ALJ must consider a claimant's subjective complaints of pain if supported by medical signs and findings. <u>Clifford v. Apfel</u>, 227 F.3d 863, 871 (7th Cir. 2000). Where the medical signs and findings reasonably support a claimant's complaint of pain, the ALJ cannot merely ignore the claimant's allegations. <u>Zurawski</u>, 245 F.3d 881, 887-888 (7th Cir. 2001). If an ALJ finds that an allegation of pain is not supported by the objective medical evidence in the record, and if the claimant still indicates that pain is a significant factor of his or her alleged disability, then the ALJ must obtain a detailed description of the claimant's daily activities by directing specific inquires about the pain and its effects to the claimant. <u>Id</u> at 887. She must investigate all avenues presented that relate to pain, including the nature and intensity of claimant's pain, precipitation and aggravating factors, dosage and effectiveness of any pain medications, other treatment for the relief of pain, functional restrictions, and the claimant's daily activities. <u>Id.</u> The ALJ's decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight. <u>Zurawski</u>,

245 F.3d at 887 (citing SSR 96-7p).

The ALJ admitted that she found Singleton's pain testimony "partially credible," but she discounted it anyway, stating that the record reflected that Singleton's pain symptoms "were responding well to medication." (Tr. 16)  In her decision, the ALJ did not elaborate on how she arrived at this conclusion or cite any specific evidence to support such a finding.

Singleton testified repeatedly that pain limits her activities.  (Tr. 319, 321) Therefore, she indicated that pain is a significant factor of her alleged disability, yet the ALJ did not explore the factors required by Zurawski and explain how her evaluation of the evidence leads to her conclusions.  Under Zurowski, the ALJ must discuss the nature and intensity of Singleton's pain, its triggers and aggravating factors, dosage and effectiveness of any pain medications,[14] other treatment for the relief of pain, any functional restrictions her pain imposed, or an account of Singleton's daily activities and an explanation of how Singleton's participation in these activities influenced the ALJ's assessment of her credibility.

The only factor the ALJ attempted to examine was the dosage and effectiveness of pain medications.  In doing so, she provided only a conclusory assertion that the record indicated Singleton's pain was responding well to medication without citing any specific evidence or explanation as to how such evidence supported her conclusion.  This discussion is inadequate and must be expanded upon remand.

Additionally, while this Court will not reweigh the evidence, there is an abundance of evidence in the record that supports the opposite of the ALJ's conclusion, making a clear

---

[14]The ALJ's decision lacks a sufficient assessment of Singleton's credibility.  She declared that "the plaintiff's use of medication [did] not suggest the presence of an impairment more limiting than that found in her decision." (Tr. 15-16).  However, the ALJ offered no specific facts or explanation to support this judgment, as required by Zurawski, so must provide both on remand.

13

explanation of how specific evidence supports the ALJ's decision even more critical. Singleton's treatment records seem to indicate that medications were largely ineffective. (Tr. 123,124,160, 164) Over the course of her treatment, Singleton's physicians variously prescribed her Celebrex, Ultracet, Arthrotec, Flexaril, Skelaxin, a wide variety of NSAIDS, and eventually the narcotic Vicodin, among others, in an attempt to find an effective pain medication. Even for the few drugs which initially seemed promising, after a brief period of partial relief, the record indicates Singleton's symptoms continued unabated. (Tr. 164) On June 13, 2003, for example, Dr. Mohr mentioned that the Arthrotec Dr. Fritz had prescribed had "helped a good deal" regarding low back pain. (Tr. 161). This relief lasted only a few weeks, however, and on August 5, 2003, Singleton reported that the medication was no longer effective and her physicians continued to experiment with other drugs over the next few years without any apparent success. (Tr. 164). Again, this Court does not reweigh the evidence on review, but absent a clear explanation of what and how specific evidence supports the ALJ's decision to disregard the evidence described above, this Court cannot accept the ALJ's assertions as reasonable.

Finally, this Court cannot find that the ALJ's failure to explore the Zurawski factors constitutes harmless error due to lack of evidence on these factors because the record is replete with evidence supporting Singleton's claims regarding each. Singleton's treatment records contain abundant references to the nature and allegedly disabling intensity of her pain (Tr. 122, 164, 269), certain activities and factors which trigger or aggravate her symptoms (Tr. 200-203, 217, 243-246, 268-269, 304-308), the dosage and effectiveness of medications prescribed (Tr. 120-121, 123, 161, 164), other treatment for the relief of her pain (120-121), the functional restrictions her conditions imposed (Tr. 200-203, 217, 304-308), and detailed testimony

14

regarding her daily activities (Tr. 317, 318, 325-326).  This Court is not holding that the ALJ's findings are necessarily incorrect, but rather that the ALJ has not provided a sufficient explanation to allow this Court to determine whether the ALJ's finding is reasonable.

Because the th ALJ failed to provide a sufficient explanation and failed to address the Zurawski factors, her decision does not survive review.

### 3. The ALJ's determination that Singleton was capable of performing her past relevant work was not supported by substantial evidence.

Under step four of the Briscoe analysis, a claimant must be found "not disabled" if she retains the residual functional capacity to perform either: (1) the actual functional demands and job duties of a particular past relevant job; or (2) the functional demands and job duties of the occupation as generally required by employers throughout the national economy.  Wolfe v. Shalala, 997 F.2d 321, 323 (7th Cir. 1993); Arbogast v. Bowen, 860 F.2d 1400, 1403 (7th Cir. 1988); Steward v. Bowen, 858 F.2d 1295, 1301 (7th Cir.1988); Veal v. Bowen, 833 F.2d 693, 697 (7th Cir. 1987).  In finding that an individual has the capacity to perform past relevant work, the determination or decision must contain a finding of fact as to the physical and mental demands of the past job/occupation.  Prince v. Sullivan, 933 F.2d 598, 602 (7th Cir. 1991) (holding that the ALJ has an affirmative duty to make the findings of fact listed in SSR 82-62). The ALJ must specify the duties involved in a prior job and assess the claimant's ability to perform the specific tasks.  Nolen v. Sullivan, 939 F.2d 516, 519 (7th Cir., 1991); see also Strittmatter v. Schweiker, 729 F.2d 507, 509 (7th Cir. 1984).  An ALJ cannot describe a claimant's job in a generic way, such as "unskilled at the light exertional level", and conclude, on the basis of the claimant's residual capacity, that she can return to her previous work.  Nolen at 518.

In reaching her decision, the ALJ noted that the vocational expert described Singleton's past work as "light exertionally and semi-skilled." She went on to report that the vocational expert's opinion, based on the plaintiff's "established residual functional capacity," was that Singleton could perform her past relevant work. Accordingly, the ALJ found that Singleton had the residual functional capacity to perform her past relevant work, and was therefore not disabled. (Tr. 16) The ALJ erred by concluding that Singleton can perform her previous job without discussing the specific duties it entailed and assessing whether she can currently perform those specific tasks. Contrary to the Nolen court's holding, the ALJ did not discuss the specific duties involved in Singleton's prior job or assess her ability to perform those specific tasks. Nolen 939 F.2d at 519.

Singleton repeatedly referenced bending over, as well as constant standing up and sitting down, as specific tasks required by her former job. (Tr. 317, 318) Additionally, plaintiff claimed that her duties included the use of fax machines, copy machines, computers, scanning equipment, microfilm equipment, and general bookkeeping. (Tr. 317, 324) She did not offer any information regarding her current ability to perform these tasks.      However, the ALJ failed to make any findings regarding these or any other specific tasks undertaken by a recorder of deeds when considering whether or not plaintiff could currently perform her previous duties. Under Nolen, the ALJ must make such findings before concluding a plaintiff is capable of returning to her previous work.

Accordingly, this court remands the matter to the ALJ to determine the demands of Singleton's relevant prior work and, based on the evidence available, her current ability to meet

16

them.[15]

### III. CONCLUSION

The ALJ's assignment of weight to the opinions of Singleton's treating physicians and her analysis of the claimant's credibility were inadequately discussed and not supported by substantial evidence.  Additionally, the ALJ's determination that Singleton was capable of performing her past relevant work was not supported by substantial evidence.  As a result, this Court **GRANTS** Singleton's request [Doc. No. 13] and this case is **REVERSED** and **REMANDED** to the Commissioner for proceedings consistent with this opinion pursuant to sentence four (4) of 42 U.S.C. § 405(g).  The clerk is instructed to term the case.

**SO ORDERED**

Dated this 13th Day of February 2008.

S/Christopher A. Nuechterlein  
Christopher A. Nuechterlein  
United States Magistrate Judge

---

[15] Furthermore, the ALJ's step five analysis is similarly flawed.  In her opinion, the ALJ concluded under step five of her <u>Briscoe</u> analysis that Singleton had acquired unspecified transferable office skills which would enable her to perform other work in the national economy as a file clerk.  (Tr. 16) However, without a more specific identification of Singleton's "general office skills" and an assessment of their transferability by the ALJ in her findings, this Court, may not meaningfully review the propriety of the ALJ's conclusions regarding their transferability under step five of the <u>Briscoe</u> analysis.